UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| LARRY BRASWELL, | ) | |
| | ) | Case Nos. 1:19-cv-16; 1:14-cr-55 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner Larry Braswell's motion to amend, correct, or vacate his sentence pursuant to 18 U.S.C. § 2255 (Doc. 1 in Case No. 1:19-cv-16). For the following reasons, the Court will **DENY** Petitioner's motion.

I.  BACKGROUND

On May 28, 2014, a grand jury returned a one-count indictment charging Braswell with unlawfully possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 11 in Case No. 1:15-cr-44.) Prior to trial, Braswell filed multiple pretrial motions, including a motion to suppress, which the Court denied. (*See* Docs. 50, 72, 77, in Case No. 1:15-cr-44.) Petitioner proceeded to trial, and the United States Court of Appeals for the Sixth Circuit summarized the evidence presented at trial as follows:

> On February 23, 2014, Chattanooga Police Officer Benjamin Piazza saw Defendant Larry Braswell walking away from the bushes in front of an abandoned house in a condemned public housing project in Chattanooga, Tennessee. A car containing a female passenger was parked in front of the house. When Officer Piazza approached Braswell, he said he had come to the housing project to talk with his passenger, Jasmine Isom, and left the car in order to urinate in the bushes. Ms. Isom was visibly upset, and she told Officer Piazza that she thought she was

going to jail. As Officer Piazza was talking to Braswell and Ms. Isom, he noticed a strong smell of marijuana. After searching the car with Braswell's consent and not finding anything, Officer Piazza concluded that the marijuana was either concealed in the car's center console or had just been removed from the car. The officer checked the status of Braswell's license and discovered that it had been revoked. Nevertheless, he told Braswell to leave the area and drive Ms. Isom home. He also told Braswell not to drive anymore until his license was reinstated and especially not to return to the area, or else he would go to jail.

After Braswell left, Officer Piazza returned to his patrol car, which was parked between two abandoned houses with its lights off, and began filling out paperwork regarding this interaction. Less than an hour later, another car entered the abandoned housing complex and drove along the same street where Officer Piazza had just encountered Braswell. It was now dark outside, and the car did not have its headlights on. The car also started to slow to a stop in front of the same house where Braswell had previously been seen. When Officer Piazza turned his patrol car's headlights on, the other vehicle also turned on its headlights and then drove away fairly rapidly. The car ran a stop sign in the process, after which Officer Piazza activated his emergency lights and pulled the vehicle over. Officer Piazza heard the driver say something such as "[W]ell, I guess I'm going to jail. . . . It turns out that Braswell was the driver, and this time he was accompanied by a male passenger.

Officer Piazza then arrested Braswell for driving on a revoked license. While conducting a search incident to that arrest, Officer Piazza found more than $1,100 in cash, as well as a digital scale covered in what appeared to be marijuana residue in Braswell's pocket. Braswell was placed in the back of the patrol car and read his *Miranda* rights. Officer Piazza and a K-9 officer then returned to the abandoned house where Officer Piazza first encountered Braswell walking away from the bushes after allegedly urinating. The drug-sniffing dog alerted several times on the bushes in front of that house. The officers searched the bushes and found a large bag containing approximately twenty-five grams of marijuana and a loaded .45 caliber handgun, "right on top of each other." . . . The gun did not appear to have been there very long, since it was not rusted and did not have any dew or dirt on it. It did, however, have visible fingerprints on it. The officers, however, never tested the gun for fingerprints.

During the search of the abandoned property, Braswell was confined in the back of the patrol car. At various points, Braswell apparently mumbled to himself, and those statements were captured by a video recording device in the patrol car. Within seconds of the officers finding the gun and marijuana, Braswell, who had been intently watching the officers discover the contraband, said what sounded like "[Expletive], man ... prints are all over this [expletive]."

*United States v. Braswell*, 704 F. App'x 528, 530–31 (6th Cir. 2017).

On September 30, 2015, a jury found Petitioner guilty of unlawfully possessing a firearm as a convicted felon. (Doc. 94 in Case No. 1:14-cr-55.) On June 24, 2016, United States District Judge Harry S. Mattice, Jr. determined that Petitioner qualified as an Armed Career Criminal under 18 U.S.C. § 924(e) and sentenced him to 235 months' imprisonment, to be followed by three years of supervised released. (Doc. 132 in Case No. 1:14-cr-55.) Petitioner appealed his conviction and sentence to the Sixth Circuit, arguing, among other things, that the Court erred in denying his motion to suppress and that it erred in failing to include a spoliation instruction in the jury instructions. *Braswell*, 704 F. App'x 528. Petitioner also argued that his conviction was not supported by sufficient evidence and that the Court incorrectly classified him as an Armed Career Criminal. *See id*. The Sixth Circuit affirmed Petitioner's conviction and sentence, holding that the Court did not err in denying his motion to suppress or by failing to include a spoliation instruction the jury instructions. *Id*. at 531–36. The Sixth Circuit also held that Petitioner's conviction was supported by sufficient evidence. *Id*. at 539–40. Finally, the Sixth Circuit held that the Court properly classified him as an Armed Career Criminal under 18 U.S.C. § 924(e). *Id*. at 541–45. On January 22, 2018, the Supreme Court of the United States denied Braswell's petition for a writ of certiorari. (Doc. 146 in Case No. 1:15-cr-44.)

On January 18, 2019, Petitioner timely filed the present § 2255 motion. (Doc. 1 in Case No. 1:19-cv-16.) According to Petitioner, law enforcement first approached him on the passenger's side of his car after returning from a bush to "reliev[e] himself." (Doc. 1-4, at 1.) Petitioner states, however, that the officers never saw him walking away from the bush where they later recovered the handgun. (*Id*. at 2.) Petitioner also asserts that his car's lights were on when officers initiated the traffic stop upon his return to the public housing project. (*Id*.) Braswell also represents that his version of his statements made in the back of the officer's patrol

3

car was not presented to the Court or the jury. (*Id*.) Finally, Braswell represents that, after officers found the handgun, Officer Piazza took pictures of the handgun at issue but later destroyed them. (*Id*.) Braswell contends that these pictures would have shown that officers handled the gun without gloves, that the gun had visual prints on it, and that the prints were wiped clean from the handgun. (*Id*.) Based on these representations, Petitioner asserts that he is entitled to relief because: (1) evidence from his traffic stop should have been suppressed; (2) the Government failed to preserve and destroyed evidence that was favorable to him; and (3) his counsel rendered ineffective assistance. (*Id*. at 4–5; Doc. 1-4, at 1–5 in Case No. 1:19-cv-16.) Petitioner's § 2255 motion is ripe for the Court's review.

## II. STANDARD OF LAW

To obtain relief under Title 28, United States Code, Section 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). The petitioner "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

In ruling on a § 2255 petition, the Court must also determine whether an evidentiary hearing is necessary. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C.

§ 2255(b). "The burden for establishing entitlement to an evidentiary hearing is relatively light, and where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Martin*, 889 F.3d at 832 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)) (internal quotation marks omitted). While a petitioner's "mere assertion of innocence" does not entitle him to an evidentiary hearing, the district court cannot forego an evidentiary hearing unless "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id*. When a petitioner's factual narrative of the events is not contradicted by the record and not inherently incredible and the government offers nothing more than contrary representations, the petitioner is entitled to an evidentiary hearing. *Id*.

### III. ANALYSIS

#### A. Violation of the Fourth Amendment

Petitioner first argues that he is entitled to relief under § 2255 because the traffic stop was not supported by probable cause. This argument fails because substantive claims for violations of the Fourth Amendment are not cognizable on collateral review. As the Sixth Circuit has explained, "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under . . . § 2255"; rather, such claims must be raised before trial or on direct appeal. *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013). Moreover, Petitioner raised his arguments regarding the constitutionality of the traffic stop on direct appeal, and the Sixth Circuit held that Petitioner's traffic stop was supported by probable cause. *Braswell*, 704 F. App'x at 531–33. Accordingly, Petitioner's § 2255 motion is **DENIED** to the extent he argues that he is entitled to

relief because the traffic stop was not supported by probable cause and violated his Fourth Amendment rights.

## B. Failure to Disclose and Preserve Favorable Evidence

On direct appeal, Braswell argued that the Court erred in failing to give the jury a spoliation instruction based on the destruction of photographs of the handgun taken by Officer Piazza at the time of Braswell's arrest. *Braswell*, 704 F. App'x at 534–36. As summarized by the Sixth Circuit in connection with Braswell's direct appeal,

> Officer Piazza originally testified at trial that he did not take any photographs of the gun and marijuana while at the scene. However, defense counsel subsequently played a video that revealed that Officer Piazza had taken pictures of the evidence on the hood of his car. The district court ordered the government to turn over the photographs the next day. When court reconvened the next morning, the government informed the court that the pictures could not be produced because they were taken on Officer Piazza's personal cell phone. That phone was later given to Officer Piazza's child and dropped by the child in the bathtub. The district court found that the evidence was not destroyed in bad faith, and that finding is not disputed on appeal.

*Id*. In affirming Braswell's conviction, the Sixth Circuit held that the Court did not abuse its discretion in declining to give a spoliation instruction based on its factual findings that Officer Piazza's action "were not undertaken in bad faith" but, instead, "were the result of shoddy police work." *Id*. at 536.

Nonetheless, Braswell now argues that he is entitled to relief under § 2255 because the Government failed to preserve photographs taken by Officer Piazza, which constitutes a violation of the requirements set forth in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (Doc. 1, at 4–5 in Case No. 1:19-cv-16.) "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "To establish a violation of *Brady*, [Petitioner] has the burden of establishing that the

prosecutor suppressed evidence; that such evidence was favorable to the defense; and that the suppressed evidence was material." *Gillard v. Mitchell*, 445 F.3d 883, 894 (6th Cir. 2006) (citing *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Jefferson v. United States*, 730 F.3d 537, 550 (6th Cir. 2013).

In this case, Petitioner's argument fails because he cannot demonstrate a reasonable probability that his conviction or sentence would have been different had the pictures been disclosed. At trial, Petitioner's counsel cross-examined Officer Piazza about the existence of the pictures, and, prior to submitting the case to the jury, the Government conceded that the photographs had been destroyed. (*See* Doc. 137 in Case No. 1:14-cr-55.) Petitioner's counsel then moved for a spoliation instruction, which the Court denied. (*See id*.). On direct appeal, the Sixth Circuit held that the Court did not abuse its discretion in denying Petitioner's request for a spoliation instruction. *Braswell*, 704 F. App'x at 533–36. Under these circumstances, Petitioner cannot demonstrate that failure to disclose the photographs prevented a fair trial or that the jury's verdict is not worthy of confidence. Indeed, if the Court granted Petitioner's § 2255 motion, vacated his conviction, and granted him a new trial, he would be in the exact same position he was at his first trial—the photographs do not exist and he would not be entitled to a spoliation instruction. As a result, Petitioner cannot demonstrate that he did not receive a fair trial or that

the destruction of the photographs alone is sufficient to undermine confidence in the jury's verdict. Accordingly, the Court will deny Petitioner's § 2255 motion to the extent he argues that the Court should vacate his conviction based on Officer Piazza's failure to preserve the photographs he took of the firearm at the time of Petitioner's arrest.[1]

### C. Ineffective Assistance of Counsel

Finally, in his § 2255 motion, Petitioner asserts that he received ineffective assistance of counsel because his counsel: (1) failed to elicit testimony that officers never saw him walk away from the bush and that he was on the passenger's side of his car when officers approached him; (2) failed to argue that the officers did not have probable cause to initiate the vehicle stop; (3) failed to elicit testimony regarding Petitioner's version "of what he said in the back of the police car"; (4) failed to assert that the Government violated *Brady* based on destruction of photos and failing to produce the officers' vehicle camera recordings; (5) failed to call Petitioner and Ms. Isom as witnesses; and (6) failed to argue at sentencing that his prior convictions did not qualify for a sentencing enhancement under 18 U.S.C. § 924(e) based on violation of the "ex post facto clause." (Doc. 1-4, at 4–5.) Effectively, Braswell contends that he received ineffective assistance of counsel because his counsel failed to introduce certain evidence at trial and failed to make certain legal arguments. (*See id*.)

To collaterally attack a conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the

---

[1] Petitioner's § 2255 motion also generally asserts that the "prosecution failed to preserve evidence favorable to defense officer destroyed evidence, tape that was to defense was altered." (Doc. 1, at 4 in Case No. 1:19-cv-16.) The Court cannot meaningfully review such conclusory allegations. *See Sermon v. United States*, No. 175340, 2017 WL 8683778, at *2 (6th Cir. Sept. 29, 2017) ("Because [Petitioner] failed to support his ground for relief with specific facts or argument, this claim does not deserve encouragement to proceed further.")

profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Rodriguez-Penton v. United States*, 905 F. 3d 481, 487 (6th Cir. 2018). However, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, courts should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Petitioner first argues that his counsel was ineffective for failing to introduce evidence at trial: (1) that he "never walked away from a bush,"; (2) that he "was on the passenger side of his car when officers first saw [him]"; and (3) regarding his version of his statements while in the back of the police car. (Doc. 1-4, at 4 in Case No. 1:19-cv-16.) Counsel's decisions regarding questioning of witnesses, however, are matters of trial strategy and, thus, are "effectively insulated" from review in the context of a motion made pursuant to 28 U.S.C. § 2255. *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001). Accordingly, Petitioner has failed to

9

demonstrate that counsel's alleged failure to elicit testimony regarding these topics prejudiced him such that the outcome of his trial would have been different.

Petitioner next argues that his counsel was ineffective in failing to call him and Ms. Isom as witnesses at trial. (Doc. 1-4, at 4 in Case No. 1:19-cv-16.) Whether or not to call or question a particular witness is a matter of trial strategy and only constitutes ineffective assistance of counsel when the decision deprives the defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *see also Bentley v. Motley*, 248 F. App'x 713, 718 (6th Cir. 2007) (describing review of counsel's decisions about trial strategy as "highly deferential"). Petitioner has not explained how counsel's strategic decision not to call Ms. Isom deprived him of a substantial defense, and, while "the ultimate decision whether to testify remains with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). Rather, "a defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel." *Id.* In this case, Petitioner does not represent that he told counsel he wanted to testify, and he does not explain how his counsel's decision not to call him as a witness deprived him of a substantial offense. Accordingly, Petitioner has not demonstrated that his counsel was ineffective for failing to call him and Ms. Isom as witnesses at trial.

Petitioner next argues that counsel was ineffective because he failed to make certain arguments. (Doc. 1-4, at 4–5 in Case No. 1:19-cv-16.) This argument fails, however, because his attorney made all of the arguments Petitioner claims he should have made. Braswell's counsel filed a motion to suppress, arguing that his traffic stop was not supported by probable cause and also raised this issue on direct appeal. (Doc. 50 in Case No. 1:15-cv-44; *see also*

*Braswell*, 704 F. App'x at 531–33.) Petitioner's counsel also cross-examined Officer Piazza regarding the photographs he took at the time of his arrest and sought a spoliation instruction from the Court after the Government conceded that it could not produce the photographs. *See Braswell*, 704 F. App'x at 534–36  Finally, Petitioner's counsel argued that his prior convictions did not qualify as ACCA predicates at sentencing and again raised those arguments on direct appeal. *Id*. at 540–45.  Braswell cannot now contend that counsel's representation fell below an objective standard of care by failing to make certain legal arguments when the record reflects that his counsel made those arguments in both the district court and on appeal.  Accordingly, the Court will **DENY** Braswell's § 2255 motion to the extent he argues that he received ineffective assistance of counsel.

## IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 motion (Doc. 1 in Case No. 1:19-cv-16; Doc. 148 in Case No. 1:14-cr-55) is **DENIED**.[2]

**AN APPROPRIAT JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[2] In addition to his § 2255 motion, Petitioner has also filed a motion to appoint counsel (Doc. 9 in Case No. 1:19-cv-16) and a motion for oral argument (Doc. 14 in Case No. 1:19-cv-16). Those motions are **DENIED**.  Finally, Petitioner has filed multiple motions to amend his § 2255 motions (Docs. 11, 13, 15 in Case No. 1:19-cv-16), but those motions fail to explain the basis for his proposed amendments.  Accordingly, those motions are also **DENIED**.  Finally, Petitioner has filed a motion for status update (Doc. 157 in Case No. 1:14-cr-55), which is **GRANTED** to the extent that this memorandum opinion is ruling on Petitioner's § 2255 motion.